```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HECTOR VALENCIA,                                              REPORT AND
                         Plaintiff,                           RECOMMENDATION
              - against -
NASSAU COUNTRY CLUB,                                          18-CV-2724 (LDH) (JO)
                         Defendant.
-----------------------------------------------------------X
```

James Orenstein, Magistrate Judge:

Plaintiff Hector Valencia ("Valencia") has accused defendant Nassau Country Club ("NCC") of failing to pay him the overtime wages he was due under state and federal law. *See* Docket Entry ("DE") 1 (Complaint); 29 U.S.C. § 201, *et seq.* (the Fair Labor Standards Act, or "FLSA"); N.Y. Labor Law ("NYLL") §§ 196-d, 650, *et seq.* The parties now seek approval of a proposed settlement agreement. *See* DE 20 ("Motion"). Upon a referral from the Honorable LaShann DeArcy Hall, United States District Judge, and for the reasons set forth below, I now respectfully recommend that the court condition approval of the proposed settlement on the parties' willingness to reduce the Valencia's counsel's fee award from $8,250.00 to $5,136.00 ($4,736.00 in fees plus $400.00 in costs) and to allocate the remaining $8,114.00 to Valencia.

I.     Background

On October 8, 2019, the parties asked the court to approve a settlement in the total amount of $13,250, with $5,000 to be allocated to Valencia and the remaining $8,250 to Valencia's counsel. *See* Motion at 2; DE 20-4 ("Agreement"). The court referred the motion to me by Order dated October 9, 2019. At a conference on October 11, 2019, I expressed concern that the parties had proposed "a settlement in which the plaintiff recovers less than the amount of claimed unpaid wages while [the plaintiff's] counsel receives 62 percent of the settlement amount." DE 21 (minute entry). I directed the parties to "confer further as to how they wish to proceed." *Id.* At a conference on

November 21, 2019, the parties reported that they did not wish to revise the proposed Agreement and instead sought a ruling on the previously submitted proposal. *See* DE 24 (minute entry).

II.     Discussion

An agreement to settle and dismiss claims under the FLSA requires the approval of either the court or the United States Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). "District courts must evaluate whether a proposed FLSA settlement is 'fair and reasonable' and whether any proposed award of attorneys' fees is reasonable." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015) (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)).

A court may calculate a reasonable fee using either the "lodestar" method or the "percentage of the fund" method. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). Either way, the court must consider the "traditional criteria" for fee applications. *See Guzman v. Joesons Auto Parts*, 2013 WL 2898154, at *1 (E.D.N.Y. June 13, 2013) (internal quotation omitted) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). Those criteria, known as the *Goldberger* factors, include among other things: the time and labor expended by counsel; the magnitude and complexities of the litigation; the risk of the litigation; the quality of representation; the requested fee in relation to the settlement; and public policy considerations. *See id.*

Under the proposed Agreement's terms, Valencia would receive only $5000.00 of NCC's payment of $13,250. His counsel, Steven J. Moser ("Moser"), would receive the remaining $8,250.00 in fees and costs. Moser has submitted contemporaneous billing records that document $13,312.50 in fees for work performed by himself and three colleagues: Nicholas Lassandro, Tania Lugo and Josianne Moser. *See* Motion at 2; Agreement ¶ 2; DE 20-3 ("Billing Records").[1]

---

[1] I assume that the bulk of the undocumented costs of $420 is attributable to Valencia's payment of the mandatory $400 filing fee, which the docket conclusively establishes and should be reimbursed.

Although Moser has provided the contemporaneous billing records necessary to calculate a reasonable lodestar, he has not submitted the biographical information required to allow the court to properly assess a reasonable hourly rate at which his work and that of his colleagues should be compensated. *See* Billing Records; *Cabrera v. Schafer*, 2017 WL 9512409, at *10 (E.D.N.Y. Feb. 17, 2017) (collecting cases holding that it is the plaintiff's burden to offer evidence in addition to counsel's affidavit to justify a proposed fee allocation); *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 305 (E.D.N.Y. 2015) (requiring biographical information to evaluate the experience of attorneys seeking reimbursement). Moser's lapse, however, does not wholly foreclose judicial review: publicly available records show that Moser is the founder and managing attorney of the firm that bears his name and that Nicholas Lassandro is a paralegal at that firm. See *About Us – Moser Employment Law*, http://www.moseremploymentlaw.com/about-us (last visited Oct. 19, 2020); *Nick Lassandro*, Linkedin, https://www.linkedin.com/in/nick-lassandro-816241169 (last visited Oct. 19, 2020). On the other hand, neither the record of this case nor the public information on Moser's firm's website provides any clue about Tania Lugo or Josianne Moser, their roles at the firm, their qualifications, or their experience.

The Billing Records reflect the following hourly rates claimed by Moser and his colleagues: $450 for Moser, $100 each for Nicholas Lassandro and Josianne Moser, and $75 for Tania Lugo. Moser's claimed rates exceeds the rate judges in this district typically approve. A reasonable hourly rate is the minimum rate a client would be willing to pay to litigate the case effectively, taking into account the prevailing rates in this district for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See*, *e.g.*, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F. 3d 182, 190 (2d Cir. 2008); *Jin Li v. W. Metal Work & Supply, Inc.*, 2019 WL 246275, at *7 (E.D.N.Y. Feb. 27, 2019). Courts in this district typically approve hourly rates of $300-$400 for law firm partners and $75-$100 for paralegal assistants and other non-attorneys. *See*, *e.g.*, *Alvarez v.*

3

*Sterling Portfolio Inv., LP*, 2017 WL 8790990, at *8 (E.D.N.Y. Dec. 13, 2017) (collecting cases); *Valdez v. H&S Rest. Operations, Inc.*, 2016 WL 3079028, at *8 (E.D.N.Y. Mar. 29, 2016). For purposes of analysis (and because, as explained below, it will not affect what I conclude is the appropriate outcome), I assume that Moser's time should be compensated at an hourly rate of $400 and the others at an hourly rate of $75. Even with those lower rates, the reasonable lodestar is greater than the amount of fees the parties propose to allocate to Moser under the Agreement.[2] I note, moreover, that courts approving the settlement of FLSA claims in this district often approve fee allocations that represent up to twice the reasonable lodestar or even more. *See, e.g.*, *Hall v. ProSource Techs., LLC*, 2016 WL 1555128, at *17 (E.D.N.Y. Apr. 11, 2016) (approving a lodestar multiplier of 2.08); *Alvarez*, 2017 WL 8790990, at *9 (approving a lodestar multiplier of 1.36). Accordingly, measured solely against a reasonable lodestar, the claimed fee is entirely reasonable.

But while the claimed fee bears a reasonable relationship to the lodestar, in the circumstances of this case it represents an unreasonably high percentage of the total settlement fund. After discounting for costs, which counsel should not have to incur, the proposed Agreement allocates just under 60 percent of the total settlement amount to Moser as his fee.

---

[2] Specifically, I calculate a reasonable lodestar of $11,497.50, as summarized in the following table.

| Name | Hours | Rate | Fee |
|---|---|---|---|
| S. Moser | 22.2 | $400.00 | $8,880.00 |
| N. Lassandro | 21.4 | $75.00 | $1,605.00 |
| T. Lugo | 10.5 | $75.00 | $787.50 |
| J. Moser | 3.0 | $75.00 | $225.00 |
| Total | 57.1 | | $11,497.50 |

Adding the established cost of $400.00 (for the filing fee) produces a total of $11,897.50. That amount exceeds the claimed allocation of $8,250 in attorney's fees and costs. In calculating a reasonable lodestar, I do not question whether the hours claimed are excessive. While some entries in the Billing Records suggest inefficiencies that the court might well take into account by applying an across-the-board percentage reduction, I would not recommend a reduction that would produce a lodestar less than the amount Moser claims.

There is of course no legal limit on the percentage of a settlement fund that an attorney may claim as fees in a case under the FLSA, "and district courts should not, in effect and practice, implement such a limit." *Fisher v. SD Protection Inc.*, 948 F.3d 593, 603 (2d Cir. 2020). But that does not mean a court has no role to play in reviewing a proposed fee that eats up most of a proposed settlement; to the contrary, courts in this circuit are cautious when asked to approve fees in excess of one-third of a proposed settlement. *See Alvarez*, 2017 WL 8790990 at *4 (citing *Martinez v. Gulloglu LLC*, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (rejecting a fee award representing thirty-six percent of the settlement). "[B]arring unusual circumstances … a fee in excess of one-third of the settlement amount disserves the FLSA's important interest in fairly compensating injured plaintiffs." *Run Guo Zhang v. Lin Kumo Japanese Rest., Inc.*, 2015 WL 5122530 at *4 (S.D.N.Y. Aug. 31, 2015). As explained below, I conclude that in the circumstances of this case, the proposed allocation of the bulk of the settlement fund to counsel while leaving most of the plaintiff's claimed damages uncompensated is unreasonable.

An analysis of the *Goldberger* factors does not reveal any unusual circumstance that warrants the unusually large percentage of the settlement the Agreement allocates.

> There are some, relatively few, FLSA cases that raise complex issues like exemptions, coverage, collective action notification, classification, or statutory interpretation. … However, the majority of cases, like this case, could hardly be simpler—an employee contends that he worked more hours than he was paid, entitling him to either unpaid minimum wages or overtime or both, and the employer lacks records to conclusively refute the claim.

*Encalada v. Baybridge Enterprises Ltd.*, 2014 WL 4374495, at *2 (E.D.N.Y. Sept. 2, 2014), *aff'd*, 612 F. App'x 54 (2d Cir. 2015). NCC sought to defend itself against Valencia's claims by asserting it is a recreational establishment exempt from the FLSA and that Valencia would not in any event be entitled to an award of liquidated damages. *See* Motion at 1. Neither issue is particularly unusual in FLSA litigation, and to the extent the former defense theory may have added a level of complexity not seen in most comparable cases, the Billing Records do not suggest that its presence in the case

5

prompted counsel to devote significant time to researching it.[3] More generally, the Billing Records further illustrate the routine nature of this litigation by documenting that Moser – apparently the only attorney billing for time on this case – performed less than half of the billed work, with the rest handled by non-lawyers. While such efficiency is entirely laudable, it does not justify allocating an unusually large share of the settlement to counsel at the client's expense where, as here, the settlement represents a compromise of the plaintiff's request for relief.

Further, the docket reveals that the parties did not devote significant resources to litigating the case before reaching an agreement to settle it. They never appeared in court before reaching an agreement to settle the case and the never even submitted a discovery plan – let alone litigate any discovery or other pretrial disputes. Rather, once it appeared the court would require the parties to appear for an initial discovery planning conference, they asked for a referral to mediation. *See* DE 14 (Order dated Dec. 10, 2018, scheduling initial conference for Feb. 6, 2019); DE 15 (letter dated Feb. 3, 2019, seeking referral to mediation in lieu of initial conference). The court promptly granted that request and entered the referral. After selecting a mediator, the parties scheduled a mediation session for June 10, 2019 and settled at that first session. *See* Selection of Mediator dated Apr. 8, 2019; DE 17 (letter dated Apr. 25, 2019); Report of Mediation Settled dated June 10, 2019. Such a frictionless path to resolution hardly justifies an unusually large share of the settlement proceeds. To the contrary, "[w]here the risks in the litigation are not particularly high and the parties reach a tentative settlement relatively shortly after the filing of an action, a reduction in the attorney fees awarded is appropriate" *Guzman*, 2013 WL 2898154 at *2-3 (cleaned up) (reducing fee award where case settled after 18 months); *see also Bricker v. Planet Hollywood N.Y., L.P.*, 2009 WL 2603149, at *3 (S.D.N.Y.

---

[3] Of the 57.1 hours of work detailed in the billing records, counsel described only 0.8 hours as being devoted to research of the recreational exemption. *See* Billing Records at 4, entries dated May 29-30 & June 5, 2019.

6

Aug. 13, 2009) (reducing fee award from one third to one quarter where case reached tentative settlement after ten months).

Another factor to consider is the quality of representation, which "is best measured by results, and … such results may be calculated by comparing the extent of possible recovery with the amount of actual verdict or settlement." *Goldberger*, 209 F.3d at 55. (internal citation omitted). In his letter seeking approval, Moser asserts that if Valencia had succeeded on his claim, NCC would have owed $8,114.00 in unpaid overtime wages. DE 20 at 1-2. He neglects to mention that had Valencia prevailed he would also have been entitled to the same amount in liquidated damages, for a total of $16,224.00. The total settlement amount of $13,250.00 thus represents approximately 82 percent of Valencia's possible recovery (and exceeds the amount of claimed unpaid wages). That is an excellent result – but becomes much less favorable if the court approves giving the lion's share of the recovery to counsel instead of Valencia. Under the terms of the proposed settlement, Valencia would recover just over 30 percent of the recovery to which he would be entitled if he prevailed, while his counsel would get over 60 percent of the settlement fund.

I cannot in good conscience endorse such an arrangement. If the parties proposed a settlement that provided complete relief to Valencia – that is, the full recovery of his unpaid wages and liquidated damages – I would not recommend that the court withhold its approval no matter how much greater an amount the agreement allocated to counsel. In such circumstances, counsel would have achieved a complete victory for his client. *See Fisher*, 948 F.3d at 607. But counsel has not achieved such a result here: even if counsel takes no fee (which I do not suggest would be appropriate), the settlement would be a compromise of Valencia's claim.

The court may not order the parties to accept a different allocation of the settlement funds between Valencia and Moser. *See id.* What it may do is "advise the parties what it would find reasonable and give them an opportunity to reach a new agreement." *Id.* I respectfully recommend

such an approach here. Specifically, I recommend that the court reject the proposed settlement and advise the parties that it would find it reasonable to allocate the full amount of $8,114.00 in claimed unpaid wages to Valencia and the remaining $5,136.00 to Moser in attorney's fees and costs. This allocation would vindicate the FLSA's remedial purpose of ensuring that workers like Valencia receive "a fair day's pay for a fair day's work[,]" *Cheeks*, 796 F.3d at 206-07, while simultaneously ensuring a fair amount of compensation for the attorneys who do the work reasonably necessary to settle a routine wage case without ever appearing in court and exchanging formal discovery.

III.    Recommendation

For the reasons set forth above, I respectfully recommend that the court condition approval of the proposed settlement on the parties' willingness to reduce the plaintiff's counsel's fee award from $8,250.00 to $5,136.00 ($4,736.00 in fees plus $400.00 in costs) and to allocate the remaining $8,114.00 to the plaintiff.

IV.    Objections

Any objections to this Report and Recommendation are due by November 2, 2020. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F. 3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
October 19, 2020

                                                        /s/
                                        James Orenstein
                                        U.S. Magistrate Judge