

Steven J. Moser, Esq.
Phone 631-759-4054
smoser@moseremploymentlaw.com

October 26, 2020

**VIA ECF**

Hon. LaShann DeArcy Hall, USDJ
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

Re:    *Valencia v. Nassau Country Club,* 18-CV-2724 (LDH) (JO)

Dear Judge DeArcy Hall:

Please accept this letter in respectful objection to the Report and Recommendation of Magistrate Judge Orenstein dated October 19, 2020 (Dkt. No. 25)(the "R&R").

## Background

As an initial matter, this case is not your typical "off the clock" case in which a plaintiff works uncompensated hours, or a "time and a half" case in which a plaintiff is paid his regular rate for overtime hours worked.  Instead, this case involves an alleged failure by the Defendant Nassau Country Club to include the value of housing and meals furnished to the plaintiff in the "regular rate" when computing overtime.  More specifically, the plaintiff lived in a room at the Nassau Country Club.  The value of the room was not included in the plaintiff's regular rate when calculating overtime.  Also, the plaintiff received meals furnished by the employer.   The plaintiff's regular rate was not increased by the value of the meals when computing overtime.

Of course, in order to determine the overtime owed, the Plaintiff had to make certain assumptions about the value of the meals and housing furnished to the Plaintiff.  The value of the meals was relatively easy to establish because the employer had included the value of meals as reportable income to the Plaintiff on his wage statement.  The potential maximum damages arising out of the failure to include the meals in the regular rate was $2,312.06.
The "housing" overtime posed challenges, however, for the plaintiff.  First, it was "assumed" that the value of the room furnished to the Plaintiff was $250 per month.  This was based upon the "fair market" value of the shared living space.  However, although "Congress explicitly authorized a wage paid by an employer to an employee to include the reasonable cost of lodging, board, and other facilities which confer similar benefits on employees, and which are customarily furnished by the employer to his employees", "Congress. . .required that the housing credit for an employer be limited to the "reasonable cost" of the lodging furnished the employee." *Soler v. G. & U., Inc., 833* F.2d 1104, 1108 (2d Cir. 1987) (internal citations omitted).  Here it was far from certain that "reasonable cost" was the same as "market value." The room was located on the top floor of the main clubhouse, and the Defendant could argue that

its "reasonable cost" was much less than the market value of the shared living quarter. Second, it was not certain that the housing furnished was primarily for the benefit of the Plaintiff. Housing furnished primarily for the employer's benefit does not constitute "income" to the employee that must be included in the regular rate. 29 C.F.R. § 531.3(d)(1). Requiring an employee to "live on site to meet a particular need of the employer" is precisely one of those "[s]pecial circumstances" in which "lodging [may be] of little benefit to an employee." *Soler*, 833 F.2d at 1109-10. The total maximum value of the "housing" overtime, assuming that the market value, not reasonable cost, was $250 monthly, amounted to $5,802.00.

In addition to asserting a good faith defense to liquidated damages, the Defendant asserted that it was an exempt recreational establishment under the provisions of 29 U.S.C. § 213(a)(3), which is incorporated into the New York Labor Law by virtue of 12 NYCRR 142-2.4; *see Brock v. Louvers & Dampers, Inc., 817* F.2d 1255, 1256 (6th Cir. 1987) (finding that a private golf club that meets the seasonality test is an exempt recreational establishment).

In sum, if the employer was successful in asserting the recreational exemption, the Plaintiff would recover nothing. Even if the employer loses on the recreational exemption issue, there is a potential risk that the value of the "housing" overtime would be much less than the amount sought, or if the fact finder determined that the "housing" was furnished primarily for the benefit and convenience of the employer, that the "housing" overtime claim would be worth nothing.

### **Relevant 2nd Circuit Precedent**

In *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 602-03 (2d Cir. 2020), the Second Circuit addressed the "routine" practice of district courts in FLSA actions in this Circuit to "apply a proportionality limit on attorneys' fees in FLSA actions."

The Second Circuit specifically held:

> Neither the text nor the purpose of the FLSA, however, supports imposing a proportionality limit on recoverable attorneys' fees. With respect to the statutory text, FLSA simply provides for a "reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b). Nothing in this clause or the surrounding text supports the conclusion that a reasonable attorney's fee must be a proportional fee.

*Fisher*, 948 F.3d at 602-03.

> By implementing "proportionality limit" on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking on "run of the mill" FLSA cases where the potential damages are low and the risk of protracted litigation high. Fee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel. In advancing Congress's goals under the FLSA to ensure a "fair day's pay for a fair day's work," the law cannot be read to impose a proportional limitation based on the perceived complexities of the litigation.

*Id.* at 603 (internal citations and quotations omitted). The Second Circuit has observed that

> The public interest in private civil rights enforcement is not limited to those cases that push the legal envelope; it is perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters future violations. Congress meant reasonable attorney's fees to be available to the private attorneys general who enforce the law, not only to those whose cases make new law.

*Quaratino v. Tiffany & Co., 16*6 F.3d 422, 426 (2d Cir. 1999). In *Fisher,* the Second Circuit unequivocally held "there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit." *Fisher*, 948 F.3d at 603.

## How the Settlement Was Calculated

On October 8, 2019, the parties asked the court to approve a settlement in the total amount of $13,250, with $5,000 to be allocated to Valencia and the remaining $8,250 to Valencia's counsel. The method of computing this distribution was as follows: The total attorneys' fees and costs ($13,312.50) were added to the total maximum overtime wages potentially recoverable by the plaintiff ($8,114), for a total of $ 21,426.50. The settlement amount was $13,250.00 (62% of the total). The attorneys' fees and Plaintiff's share of the recovery were both multiplied by 62% to arrive at $8,250 in attorneys' fees and $5,000 in overtime payable to the Plaintiff. This is shown in the following chart:

|  | Original Amt |  | Proportional Amount |
|---|---|---|---|
| Attorneys' Fees & Costs | $13,312.50 | 62% | $8,250 |
| Overtime (Excluding Liquidated Damages) | $8,114.00 | 62% | $5,000 |
| TOTAL | $21,426.50 |  | $13,250 |
| Settlement | $13,250.00 |  |  |
| Settlement % | 62% |  |  |

Using this method, the litigation risk (which is reflected in the settlement of the case for $13,250 rather than the full $21,426.50) is shared by the Plaintiff and Plaintiff's Counsel.

## The Report & Recommendation

Although Magistrate Orenstein computed the reasonable lodestar at $11,497.50, he recommended that the settlement not be approved unless the Plaintiff receive 100% of the overtime to which he would be entitled under a best-case scenario (excluding liquidated damages).

In making the recommendation that the settlement not be approved unless the Plaintiff receives 100% of the overtime to which he is entitled under a best-case scenario, the Magistrate noted "[t]here is of course no legal limit on the percentage of a settlement fund that an attorney may claim as fees in a case under the FLSA, "and district courts should not, in effect and practice, implement such a limit." *Id.* . However, the R&R cites to pre-*Fisher* case law for the proposition that "barring unusual circumstances … a fee in excess of one-third of the settlement amount disserves the FLSA's important interest in fairly compensating injured plaintiffs." *Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13 Civ. 6667 (PAE), 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015) (R&R, at 5). *Zhang* is no longer sound precedent, persuasive or otherwise, in light of *Fisher*.

The Report and Recommendation's requirement of "proportionality" is in direct tension with the Second Circuit's decision in *Fisher*, 948 F.3d at 602-03. "Neither the text nor the purpose of the FLSA. . .supports imposing a proportionality limit on recoverable attorneys' fees." *Id.* However, the Magistrate Judge specifically used proportionality as a basis for non-approval. See R&R at 4 ("But while the claimed fee bears a reasonable relationship to the lodestar, in the circumstances of this case it represents an *unreasonably high percentage* of the total settlement fund.)(emphasis supplied); (R&R, at 5)("I conclude that in the circumstances of this case, the *proposed allocation. . .*is unreasonable.)(emphasis supplied).

The reasons for denying approval are also inconsistent with the Second Circuit's reasoning in *Fisher*. Magistrate Orenstein recommended that the court "reject the proposed settlement" in order to "vindicate the FLSA's remedial purpose of ensuring that workers like Valencia receive 'a fair day's pay for a fair day's work[,]'" R&R, at 8 (citing *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206-07 (2d Cir. 2015)). However, the Second Circuit has made it abundantly clear that only by incentivizing the Plaintiff's bar to accept such "run of the mill" FLSA cases can Plaintiff's rights be protected. *See Fisher*, 948 F.3d at 603. "Fee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel. In advancing Congress's goals under the FLSA to ensure a "fair day's pay for a fair day's work," the law cannot be read to impose a proportional limitation based on the perceived complexities of the litigation. *Id.* (internal citations and quotations omitted).

Another problem with the R&R is that it gives the Plaintiff a windfall at the expense of Plaintiff's counsel. According to the R&R, the amount that the Plaintiff receives should not be reduced based upon the risks of litigation – which include the risk that the Plaintiff would recover *nothing* on his overtime claims due to the exemption asserted, or *nothing* on his asserted housing overtime claims because the room was furnished for the primary benefit of the employer.

Moreover, having concluded that the settlement amount is inadequate to compensate the plaintiff fully for the amount the court believes he should receive ($8,116.00), plus his attorneys' fees and costs ($11,897.50), the R&R's proposed solution is not for the Defendant to offer more money to resolve the case, but instead for Plaintiffs' attorneys to take a haircut.

Finally, the R&R makes a determination that the Plaintiff should receive his full overtime owed under a best-case scenario without any consideration of the risks of proceeding. However, if the case continues the litigation risk will be borne by the Plaintiff alone. Therefore, the R&R is, respectfully, not in the best interests of the Plaintiff.

## **Conclusion**

While Plaintiff's counsel (as well as the Plaintiff) firmly believe that the present settlement is fair and reasonable, the Court found that the lodestar amount should be $11,497.50 rather than the $12,912.50 originally claimed. Using attorneys' fees and costs of $11,897.50 in the computations used to calculate the original distribution yields a slightly less amount in attorneys' fees and costs.

|  | Original Amt |  | Proportional Amount |
|---|---|---|---|
| Attorneys' Fees and Costs | 11,897.50 | 66% | $7,877.56 |
| Overtime (Excluding Liquidated Damages) | 8114.00 | 66% | $5,372.44 |
| TOTAL | 20,011.50 |  | $13,250.00 |
| Settlement | $13,250.00 |  |  |
| Settlement % | 66% |  |  |

Plaintiff therefore respectfully requests that the current settlement be approved in its entirety, or, in the alternative, that the settlement be approved upon the condition that the amount payable as attorney's and costs be reduced to $7,877.56 and the amount payable to the Plaintiff be increased to $5,372.44.

Respectfully submitted,

Steven J. Moser